**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

MT. HAWLEY INSURANCE COMPANY,

    Plaintiff,

v.

SWIFT CONSTRUCTION, LLC,

    Defendant.

Civil Action No. 15-2187 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on motions for summary judgment (ECF Nos. 29, 30) filed by Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley") and Defendant Swift Construction, LLC ("Swift"). Both Mt. Hawley and Swift filed opposition to their adversaries' motion (ECF Nos. 31, 32) and replied (ECF Nos. 34, 35). The Court has carefully considered the parties' submissions and held oral argument on February 21, 2018. For the reasons stated below: (i) Mt. Hawley's motion for summary judgment (ECF No. 30) is GRANTED in part, and DENIED in part; and (ii) Swift's motion for summary judgment is DENIED.

**I.    BACKGROUND**[1]

This case arises out of an accident that occurred at a construction site and years of litigation that followed in New Jersey state courts, including an underlying personal injury case that

---

[1] Swift included a factual recitation in its brief but failed to submit a statement of undisputed material facts in compliance with Local Civil Rule 56.1, which is grounds to dismiss its motion outright. L.Civ.R. 56.1(a) ("On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, *in separately numbered paragraphs* citing to the affidavits and other documents submitted in support of the motion. *A motion for summary judgment unaccompanied by a statement of material facts*

culminated in a settlement ("*Andalora* Litigation") and a declaratory judgment action regarding insurance coverage. The parties to the various lawsuits included the injured construction worker and his wife, the general contractor on the job site, the subcontractor that employed the injured worker, and various insurance companies. In its Complaint, Mt. Hawley, insurer of ICS, the general contractor, and ICS's asserted subrogee, alleges that because construction worker Dominic Andalora's ("Andalora") injuries were not caused by ICS's sole negligence (Compl. ¶¶ 50-52, 66, ECF No. 1), it is entitled to full indemnification from Swift, a subcontractor and Andalora's employer, pursuant to a subcontract for, *inter alia*, $1 million paid toward ICS's portion of the settlement of the *Andalora* Litigation, costs incurred in defending ICS in the *Andalora* Litigation, and costs incurred enforcing the subcontract in the *Andalora* Litigation and this federal action (*id.* at 13).

A.  **History of Litigation**

On September 9, 2006, ICS, the general contractor for construction of a bank in Franklin, New Jersey, awarded Swift a subcontract for work at the site via a Letter of Intent ("Letter of Intent"). (Pl.'s Resp. to Def.'s SUMF ¶ 1.) The Letter of Intent set forth at least some of the scope of the work and the contract value. (*Id.*) Sometime after the date of the Letter of Intent,[2] ICS issued Swift a subcontract agreement ("Subcontract") containing an indemnification provision that

---

*not in dispute shall be dismissed.*") (emphasis added). In its Responsive Statement of Undisputed Material Facts (Pl.'s Resp. to Def.'s SUMF, ECF No. 32-1), Mt. Hawley separated the factual portion of Swift's brief into numbered paragraphs and responded to each in turn. Nevertheless, the Court will consider the merits of Swift's motion and cite to Pl.'s Resp. to Def.'s SUMF.

[2] The parties dispute when the Subcontract was issued. Swift asserts that ICS issued the Subcontract on October 23, 2006 (Pl.'s Resp. to Def.'s SUMF ¶ 2) and several days after the Andalora's accident (*id.* ¶¶ 3, 7), while Mt. Hawley contends that the Subcontract was issued before Andalora's accident (*id.*). As discussed below in <u>Section III.A.2.A.</u>, the Court does not deem the date of the Subcontract issuance material to its analysis.

2

required Swift to indemnify ICS for claims arising out of Swift's acts or omissions, whether or not ICS contributed in whole or in part, and as limited by applicable law. (*Id.* ¶ 2; Subcontract Agreement, Ex. B to Mulcahy Certification at 11, ECF No. 29-3.[3])

On October 6, 2006, Swift's employee, Andalora, fell from scaffolding at the job site and suffered severe injuries. (Pl.'s Resp. to Def.'s SUMF ¶ 4.) The *Andalora* Litigation commenced in 2008, when Andalora brought suit against ICS and R.D. Mechanical Corp. ("R.D. Mechanical"), a plumbing subcontractor on the site. (*Id.*) ICS filed a third-party complaint against Swift on October 21, 2008, seeking indemnification, among other things. (*Id.* ¶ 5.) In 2011, Swift filed a motion for summary judgment in the *Andalora* Litigation and in denying the motion, the superior court found that the language of the indemnification clause was not ambiguous.[4] (*Id.* ¶ 6.)

At the time of Andalora's accident, Swift was insured by The Hartford Insurance Company of the Midwest ("Hartford"), ICS was insured by Mt. Hawley, and R.D. Mechanical was insured by Liberty Mutual Insurance Company ("Liberty Mutual"). (*Id.* ¶ 9.) ICS was an additional insured to Swift's Hartford policy. (*Id.*) Hartford accepted ICS's tender of defense subject to a complete reservation of rights. (*Id.*; June 30, 2009 Letter from Hartford to ICS, Ex. I to Mulcahy Certification at 97.) In 2010, Hartford filed a declaratory judgment action ("DJ Action") against Mt. Hawley, and Mt. Hawley filed a third-party complaint against Liberty Mutual. (Pl.'s Resp. to Def.'s SUMF ¶ 10.) On September 30, 2011, the court in the DJ Action ruled that each of the

---

[3] For ease of reference, the Court cites exhibits to the Mulcahy Certification using the page numbers generated by the electronic filing system.

[4] The parties dispute whether, in connection with its 2011 motion for summary judgment: (i) Swift argued that the indemnification clause did not apply to Andalora's accident because the Subcontract was not executed until several weeks afterwards; and (ii) whether the state court judge ruled that the timing or enforceability of the contract presented an issue of material fact. (Pl.'s Resp. to Def.'s SUMF ¶ 6.) The Court does not consider these disputes material.

3

three insurers must share equally in the defense and settlement obligations of ICS ("DJ Order"). (*Id.* ¶ 11.)

In October 2012, the *Andalora* Litigation settled for $5 million, with Hartford contributing $3 million of the settlement proceeds.[5] (*Id.* ¶ 12.) Although Mt. Hawley did not participate in the settlement, the Andaloras released their claims against ICS through the settlement. (*Id.* ¶ 13.) Hartford filed a motion to enforce the DJ Order, and on October 26, 2012 and January 2, 2013, respectively, the superior court ordered Mt. Hawley to pay Hartford $1 million and fees. (*Id.* ¶ 14.) Mt. Hawley did not appeal the DJ Order or the order on the motion to enforce. (*Id.* ¶ 16.) In May 2014, Mt. Hawley asked the court to enter a new order in the DJ Action in connection with the ruling that it was required to reimburse Hartford $1 million, but the court denied the request. (*Id.* ¶ 19.) ICS then requested that the *Andalora* Litigation be reopened for a trial on its indemnification claim against Swift, and the court reopened the case. (*Id.* ¶ 20.) On March 20, 2015, the court dismissed ICS's third party complaint with prejudice, finding that ICS suffered "no cognizable damages." (*Id.*; Mar. 20, 2015 Motion Tr. 11:11, Ex. U to Mulcahy Certification.) ICS appealed the decision (*id.* ¶ 20) and Mt. Hawley filed this federal action (*id.* ¶ 21). Swift moved to dismiss the federal action and on October 28, 2015, the Court issued an order: (i) denying Swift's motion to dismiss; (ii) staying and administratively terminating the case, pending the New Jersey Appellate Division's decision in the *Andalora* Litigation appeal; and (iii) permitting either party to move to reopen the case upon resolution of the appeal. (October 28, 2015 Order, ECF No. 17.)

---

[5] Mt. Hawley disputes that: (i) Hartford paid the settlement on ICS's behalf (*id.* ¶ 12); (ii) the indemnification claim against Swift and any cross-claims were resolved, as the contractual indemnification claim remained open; and (iii) it knew it was obligated to fund the settlement (*id.* ¶ 13).

4

On January 10, 2017, the Appellate Division issued a published opinion on the state court appeal, and stated, in summary:

> [A]fter the underlying personal injury lawsuit, which sparked this insurance coverage litigation, was settled, [ICS's] insurer[, Mt. Hawley] retained subrogation rights against ICS's subcontractor[, Swift]. [Mt. Hawley's] right to assert the subrogation claim did not turn on whether ICS suffered any actual damages by virtue of [Swift's] alleged breach of an indemnification clause in the construction contract. ICS had no damages because [Mt. Hawley] paid ICS's alleged share of the settlement. Procedurally, [Mt. Hawley] should then have asserted its subrogation claim in its own name as the real party in interest, but it was error for the trial court to dismiss ICS's lawsuit against [Swift] with prejudice. Since [Mt. Hawley] has now filed a separate subrogation lawsuit in its own name, we modify the March 20, 2015 order to provide for a dismissal of ICS's lawsuit without prejudice.

*Andalora v. R.D. Mech. Corp.*, 152 A.3d 968, 969-70 (N.J. Super. Ct. App. Div. 2017). Accordingly, on January 30, 2017, Mt. Hawley moved to reopen this case. (Pl.'s Motion to Reopen Case, ECF No. 18.) On June 28, 2017, the Court granted Mt. Hawley's motion to reopen and set a briefing schedule for motions for summary judgment "on all issues between the parties." (June 28, 2017 Order, ECF No. 28.)

**B. Andalora's Accident**

As a threshold matter, Swift failed to file a responsive statement to Plaintiff's Statement of Undisputed Material Facts (Pl.'s SUMF, ECF No. 30-1). "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L.Civ.R. 56.1(a). Accordingly, the entirety of Plaintiff's Statement of Undisputed Material Facts is deemed undisputed, and the Court sets forth only the facts necessary to determine the instant motion. Further, in its opposition, conceded that "admittedly, [ICS's] sole negligence issue does not appear to be a 'winner' for Swift . . . ." (Def.'s Opp'n Br. 2, ECF No. 31.)[6]

---

[6] At oral argument, defense counsel stated that "the submissions produced before this Court by Mt. Hawley and on behalf of ICS, I guess, don't necessarily preclude the possibility that they could be

5

The facts underlying the *Andalora* Litigation reflect that Andalora was tasked with installing metal track onto the ceiling of the project, which was about eleven and a half feet high, while standing on a Baker scaffold about five and a half to six feet off the ground. (Pl.'s SUMF ¶¶ 17, 22.) A Baker scaffold is extendable, mobile, and on caster wheels that can be locked to prevent the scaffold from moving. (*Id.* ¶ 21.) If the caster wheels are not locked, however, a worker standing on the scaffold can cause the scaffold to move if he shifts his weight. (*Id.*) The proper way for a worker to move a Baker scaffold is to climb down, move it to the desired location, and then climb back on. (*Id.* ¶ 23.) Andalora testified that: (i) "he was trained and certified in safety and the use of Baker scaffolds;" (ii) a scaffold user should not use a scaffold unless the wheels are locked; and (iii) he instructed new carpenters not use a scaffold unless the wheels are locked. (*Id.* ¶¶ 23-25.) Andalora further testified that: (i) he allowed another worker to push the Baker scaffold while he was standing on top; (ii) he knew this practice was unsafe; and (iii) he relied on his co-worker for safety. (*Id.* ¶ 28.) Swift's president, Martin Cogley, witnessed the accident and testified that he saw Andalora standing on the scaffold with his hands on a steel beam on the ceiling, essentially "scooting" the scaffold, a practice by which workers propel themselves and the scaffold while remaining atop. (*Id.* ¶¶ 26, 36.) The scaffold "jump[ed]" and then "topple[d]" and Andalora fell. (*Id.* ¶ 36.)

Swift's September 16, 2008 answer to ICS's third-party complaint in the *Andalora* Litigation alleges that Andalora was negligent and responsible for his injuries. (*Id.* ¶ 63.) Swift, also "served interrogatory responses on May 6, 2009, stating that '[Andalora] was comparatively

---

found solely negligent." (February 21, 2018 Oral Argument Tr. 8:6-9.) This factual argument, however, is not properly contained within a statement of undisputed facts or response to a statement of undisputed facts and, therefore, the Court will not consider these facts in its consideration of the summary judgment motion.

6

negligen[t] in causing his injuries'" and that "it was not aware of a party other than plaintiff whose negligence caused the accident." (*Id.* ¶ 64.)

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact—a fact "that might affect the outcome of the suit under the governing law", *Anderson*, 477 U.S. at 248—raises a "genuine" dispute if "a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 250). To determine whether a genuine dispute of material fact exists, the Court must consider all facts and reasonable inferences in a light most favorable to the non-movant. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249.

The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Thereafter, the nonmoving party creates a "genuine [dispute] of material fact if sufficient evidence is provided to allow a jury to find for him at trial." *Gleason v. Norwest Mort., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

## III. DISCUSSION

### A. Swift's Motion for Summary Judgment

#### 1. Parties' Positions

Swift moves for summary judgment on three grounds. First, it argues that the indemnification clause in the Subcontract does not apply because the Subcontract was not executed until several weeks after the underlying accident and there was no meeting of the minds as to indemnification at the time of the accident. (Def.'s Moving Br. 18-19, ECF No. 29-1.) According to Swift, the parties were bound only by the Letter of Intent at the time of Andalora's accident, and that document does not contain an indemnification provision. (*Id.* at 20.) Second, Swift essentially disagrees with the Appellate Division's decision and asserts that Mt. Hawley is not a proper subrogee of ICS because neither ICS nor Mt. Hawley made any payment to extinguish ICS's liability in the *Andalora* Litigation. (*Id.* at 21.) Swift contends that as a result of the settlement, ICS no longer had damages to pursue from Swift through indemnification. (*Id.* at 22.) Finally, Swift claims that Mt. Hawley is barred from seeking relief because Mt. Hawley and ICS "slept on their rights" by allowing the *Andalora* Litigation and the DJ Action to close without seeking review or appeal of adverse decisions. (*Id.* at 25-26.) Swift also claims that Mt. Hawley's reliance on the Appellate Division's decision is misplaced, as much of the Appellate Division's decision constitutes dicta and it is not dispositive of the matters in instant case. (Def.'s Reply Br. 7-9.)

In opposition, Mt. Hawley argues that Swift waived the right to contest the enforceability of the Subcontract by failing to do so in previous state trial and appellate litigation. (Pl.'s Opp'n Br. 13-19, ECF No. 32.) Regardless, Mt. Hawley contends that the Subcontract was valid at the time of Andalora's accident because it is dated October 4, 2006, despite the fact that it was fully

executed on a later date. (*Id.* at 22.) Moreover, Mt. Hawley contends that the Appellate Division confirmed both the continuing viability of ICS's contractual indemnification claim against Swift and its right to pursue the claim as a subrogee of ICS. (*Id.* at 29-30.) According to Mt. Hawley, the Appellate Division addressed and found unavailing Swift's arguments that ICS lacked standing and that Swift failed to appeal to the New Jersey Supreme Court. (*Id.* at 4.) Finally, Mt. Hawley maintains that the Appellate Division recognized ICS's delay in the underlying matter but found that Mt. Hawley should nevertheless be permitted to pursue its claims. (*Id.* at 4, 32.)

### 2. Discussion

Contrary to Defendant's assertions, the Court finds that the substance of the Appellate Division's opinion is not dicta. "Dicta are 'judicial comment[s] made while delivering a judicial opinion, but one[s] that [are] unnecessary to the decision in the case and therefore not precedential . . . .'" *United States v. Dupree*, 617 F.3d 724, 740 (3d Cir. 2010) (quoting Black's Law Dictionary 1177 (9th ed. 2009) (alternations in original)); *Connecticut v. Doehr*, 501 U.S. 1, 30 (1991) (Rehnquist, C.J., concurring) (dicta are discussions of "abstract and hypothetical situations not before [the court]"); *State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 92 (3d Cir. 2009) (dicta are "statement[s] of law in the opinion which could not logically be a major premise of the selected facts of the decision") (alteration in original). The Appellate Division's ultimate decision—remanding the case to the trial court solely to modify the dismissal of ICS's third-party complaint to "without prejudice"—may have been unusual; however, the Appellate Division did so explicitly to allow Mt. Hawley to pursue relief in its already-filed federal action and set forth the rationale for this decision. *See Andalora*, 152 A.3d at 969-70. Accordingly, given that the New Jersey Appellate Division issued a precedential opinion in a case involving the

interests of the parties to this action, and as explained further below, the Court affords the decision significant weight.

### a. Effective Date of the Subcontract

A federal court's determination of whether a contract was formed is guided by state substantive law. *See J.I. Hass Co., Inc. v. Gilbane Bldg. Co.*, 881 F.2d 89, 92 (3d Cir. 1989) ("Our first task upon review is to ascertain whether, as a matter of law, a contract existed . . . . [W]e look to the substantive law of New Jersey.").[7] "Under the law of New Jersey, the central query in the construction of contracts is the intent of the parties." *Gilbane Bldg. Co.*, 881 F.2d at 92 (citing *Kearny PBA Local 21 v. Town of Kearny*, 405 A.2d 393, 400 (N.J. 1979); *Barco Urban Renewal Corp. v. Hous. Auth. of Atl. City*, 674 F.2d 1001, 1008 (3d Cir. 1982)). "It is not necessarily the parties' true intent, but the intent as expressed or apparent in the writing, that controls." *Id.* (citing *Friedman v. Tappan Dev. Corp.*, 126 A.2d 646, 650 (N.J. 1956)). "Where the contract is clear and unambiguous, the determination of the parties' intent is purely a question of law within the exclusive province of the trial court." *Id.* (citing *Gray v. Joseph J. Brunetti Constr. Co.*, 266 F.2d 809, 813-14 (3d Cir. 1959), *cert. denied*, 361 U.S. 826 (1959); *Newark Publishers' Ass'n v. Newark Typographical Union*, 126 A.2d 348, 353 (N.J. 1956)).

New Jersey law permits retroactive application of contracts. For example, in a case where plaintiffs argued "that a contractual agreement for indemnification cannot cover events which occur prior to the formation of that contract," a district court found that "the . . . well-settled law in New Jersey . . . is . . . '*unless the parties understand otherwise*, a contract speaks as of the date it was signed.'" *Bowen Eng'g v. Estate of Reeve*, 799 F. Supp. 467, 486 (D.N.J. 1992) (quoting

---

[7] "[F]ederal courts sitting in diversity jurisdiction apply state law to substantive issues and federal law to procedural issues." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017).

10

*Einhorn v. Ceran Corp.*, 426 A.2d 1076, 1080 (N.J. Super. Ct. Ch. Div. 1980), *aff'd*, 447 A.2d 186 (N.J. Super. Ct. App. Div. 1982). In determining the intended effective date of a contract, "if no subjective intent is apparent or ascertainable, that intent must be based on the objective language of the contract." *State Troopers Fraternal Ass'n v. State of N.J.*, 692 A.2d 519, 524 (N.J. 1997) (holding that although a contract was signed on April 26, 1990, "[t]he express application of the contract terms to the period beginning July 1, 1987 and the express inclusion of that date as the contracting date, implies a mutual intent that the agreement be deemed as having been signed on that date.")

Here, Swift cites to the three certifications made by Cogley in each of 2010, 2012, and 2017 ("Cogley Certifications") (Def.'s Moving Br. 7; Def.'s Reply Br. 1-2; Feb. 24, 2012 and July 21, 2017 Cogley Certifications, Ex. C to Mulcahy Certification, ECF No. 29-3; October 13, 2010 Cogley Certification, Ex. 2 to Mulcahy Certification, ECF No. 34-1) as support for its assertion that the indemnification provision of the Subcontract was not in effect during Andalora's accident. (Def.'s Moving Br. 7; Def.'s Reply Br. 1-2.) Swift contends that Cogley executed the Subcontract on October 27, 2006. The record, however, does not support this statement. The date included in Cogley's signature blocks is October 23, 2006. (Subcontract Agreement 5, 9, 13.)

Further, the Court disregards the Cogley Certifications in its analysis. "As a general proposition, 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)). However, "a single, non-conclusory, affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment or judgment as a matter of law." *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180, 189 (3d Cir. 2011),

11

*as amended* (Sept. 29, 2011) (citing *Kirleis*, 560 F.3d at 161-63). "This remains true even if the affidavit is 'self-serving' in the sense of supporting the affiant's own legal claim interests." *Id.* at 190. "Put differently, a self-serving affidavit may defeat summary judgment *in the absence of other evidence rendering it incredible.*" *Marrin v. Capital Health Sys.*, No. 14-2558, 2017 WL 2369910, at *17 (D.N.J. May 31, 2017) (quoting *Gonzalez*, 678 F.3d at 264) (emphasis added). The 2010 Cogley Certification states that Cogley did not sign the Subcontract until October 27, 2006 and:

> at no time did I agree on behalf of Swift to indemnify ICS and to assume the risks associated with ICS's own, independent negligence relative to ICS' obligations to third parties, including the plaintiff. . . . Rather, my understanding of the indemnification provision in the [Subcontract] was such that I was agreeing to indemnify and hold ICS harmless as to work performed by Swift, only.

(2010 Cogley Certification at 26.) The 2012 Cogley Certification repeats the previously quoted language almost verbatim and adds that "material terms to the [Sub]contract were still being negotiated at the time of plaintiff's accident." (2012 Cogley Certification at 28.) Finally, in connection with the instant litigation, the 2017 Cogley Certification adds that "[a]ccordingly, it is my position on behalf of Swift that *there certainly have been no 'meeting of the minds' as my attorney has explained that contractual phrase to me,* between Swift and/or ICS, at least prior to the October 27, 2006 execution of the Subcontract and frankly, even thereafter . . . ." (2017 Cogley Certification at 26) (emphasis added).

The Court finds that Cogley's certifications are conclusory and "other evidence render[s] them] incredible." *Gonzalez*, 678 F.3d at 264. Cogley made the certifications four, six, and eleven years after the contract negotiations in question. Moreover, his narrative evolves slightly over time, and ultimately provides a legal conclusion seemingly after the advice of his attorney. Finally, the record reflects that the Subcontract was dated October 4, 2006 (Subcontract 6) and although Cogley made handwritten changes to three of its provisions, he did not modify any indemnification

12

language (*see id.* at 10, 12). The Court will not, therefore, consider the Cogley Certifications in its analysis.

In ruling on a summary judgment motion, a court in the Southern District of New York applied this New Jersey state law rule. *See Zirinsky v. Tomai*, 99 Civ. 1037, 2001 WL 11073, at *4 (S.D.N.Y. Jan. 3, 2001). In that case, the defendant asserted that because an agreement was signed after March 17, 1989, the date on which loans at issue were obtained, the agreement's terms did not apply to the loans. *Id.* at *1, *4. The court rejected this argument, finding that the agreement "was effective as of January 1, 1989. . . . As the contract clearly states that it is 'made as of' January 1, 1989, and as the defendant does not assert that the[] partners intended another effective date, [it] enforce[d] the . . .[a]greement as written." *Id.* As the Court disregards the Cogley Certifications, the Court finds that "no subjective intent is apparent or ascertainable," and looks to the "objective language" of the Subcontract. *State Troopers Fraternal Ass'n*, 692 A.2d at 524. Because the Subcontract is dated October 4, 2006 and New Jersey law permits retroactive dating of contracts, absent evidence that the parties intended another effective date, the Court enforces the contract as effective as written and finds that the Subcontract was in effect during Andalora's accident. The Court, therefore, denies Swift summary judgment on this ground.

### b. Challenge to Appellate Division's Holding

The Court finds Swift's challenge to the Appellate Division's holding unavailing. In support of its position, Swift largely replicates the citation to case law it presented to the Appellate Division in its Respondent's Brief. (*Compare* Def.'s Moving Br. 21-23 *with* Respondent's Br. 12-15, D'Ambrosio Certification Ex. 6, ECF No. 32-9.) These cases do not aid the Court in its analysis, as they are legally and factually distinguishable from the instant matter. Swift bears the burden of demonstrating that it is entitled to summary judgment in its favor. The Court finds that

Swift did not carry its burden to demonstrate that it is entitled to summary judgment on this ground. The Court agrees with the Appellate Division's holding and finds that Mt. Hawley is subrogated to ICS's right to claim indemnification from Swift for damages Mt. Hawley paid to settle the *Andalora* Litigation. Summary judgment on this ground is, therefore, denied.

### c. Mt. Hawley's Failure to Appeal Adverse Decisions

The Court finds that Swift did not demonstrate it is entitled to summary judgment on the grounds that Mt. Hawley purportedly failed to appeal adverse decisions rendered against it in state court. In its moving brief, Swift does not provide citations to case law that support its assertion (*see* Def.'s Moving Br. 25-27) but in its reply, cites three cases implicating the doctrine of laches, without explicitly calling the doctrine by name (*see* Def.'s Reply Br. 2). The doctrine of laches "is invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." *Knorr v. Smeal*, 836 A.2d 794, 800 (N.J. 2003) (citing *In re Kietur*, 752 A.2d 799, 805 (N.J. Super. Ct. App. Div. 2000). In order for the doctrine to be enforced, "the delaying party [must have] had sufficient opportunity to assert the right in the proper forum and the prejudiced party [must have] acted in good faith believing that the right had been abandoned." *Id*. (citing *Dorchester Manor v. Borough of New Milford*, 670 A.2d 600, 604 (N.J. Super. Ct. Law Div. 1994), *aff'd*, 670 A.2d 576 (N.J. Super. Ct. App. Div. 1996)). A court determining whether to apply the doctrine of laches must consider "the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.'" *Id*. (quoting *Lanvin v. Bd. of Educ.*, 447 A.2d 516, 520 (N.J. 1982)). "The core equitable concern in applying laches is *whether a party has been harmed by the delay*." *Id*. (citing *Lanvin*, 447 A.2d at 519-20) (emphasis added). While Swift seems to make an equitable argument that it would be unfair to allow Mt. Hawley to pursue its indemnification claim

at this juncture, it does not assert that it has been prejudiced by any delay on Mt. Hawley's part. Moreover, the Appellate Division did not find that any delay prevented Mt. Hawley from pursuing its claim.

Finally, Swift makes a passing assertion, without specific analysis, that Mt. Hawley "violat[ed] the entire controversy doctrine by failing to timely pursue, as subrogee, ICS's indemnification claim in the state court actions." (Def.'s Moving Br. 20.) In connection with its claim that a plenary hearing on ICS's indemnification should have been held in a state court proceeding, Swift also cites the New Jersey court rule regarding the entire controversy doctrine. (*Id.* at 26 (citing N.J. Court Rule 4:6-7).) Absent explanation, however, Swift has not carried its burden to successfully assert that the entire controversy doctrine applies to bar Mt. Hawley's claim. The Supreme Court of New Jersey has held that:

> [i]n its application, the entire controversy doctrine requires us to consider fairness to the parties, as the polestar of the application of the rule is judicial fairness. Consequently, the boundaries of the entire controversy doctrine are not limitless. It remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases.

*Highland Lakes Country Club & Cmty. Ass'n v. Nicastro*, 988 A.2d 90, 91 (N.J. 2009) (quoting *Oliver v. Ambrose*, 705 A.2d 742, 748 (N.J. 1998)). In light of the absence of adequate analysis by Swift and in consideration of the Appellate Division's holding that Mt. Hawley could pursue its indemnification claim against Swift, the Court declines to apply the entire controversy doctrine to bar Mt. Hawley's claim. The Court, therefore, denies summary judgment on this ground.

### B. Mt. Hawley's Motion for Summary Judgment

#### 1. Parties' Positions

Mt. Hawley moves for summary judgment on the "single question" of general contractor liability, arguing that ICS cannot be held solely liable for Andalora's injuries. (Pl.'s Moving Br.

15

2-3, ECF No. 30-23.) According to Mt. Hawley: (i) the indemnification clause in the Subcontract provided that Swift would "indemnify ICS for any liability for claims for injuries made by Swift's employees on the project as broadly as permitted by law" (*id*. at 22-23); and (ii) New Jersey law prohibits indemnification of a party for its sole negligence (*id*. at 23). Accordingly, Mt. Hawley asserts that Swift owes ICS indemnification for Mt. Hawley's contribution to the settlement of the *Andalora* Litigation unless ICS was solely negligent. (*Id*. at 24.) Even if ICS had "some measure of responsibility" for Andalora's accident as a result of its general supervisory authority over the project, Mt. Hawley argues that: (i) based on the facts surrounding the accident, Andalora, Swift, R.D. Mechanical, and other Swift workers were all contributorily negligent; (ii) ICS was not solely responsible; and (iii) Swift must indemnify ICS and Mt. Hawley, as ICS's subrogee. (*Id*. at 4, 24.) Mt. Hawley also asserts that pursuant to the Subcontract, it is entitled to attorneys' fees and costs incurred in its and ICS's enforcement of their indemnification rights against Swift. (*Id*. at 36.) Swift opposed, arguing that the Court permitted the case to be reopened with respect to all pending issues in the matter, not just the issue of ICS's negligence. (Def.'s Opp'n Br. 1-2, ECF No. 31.) Mt. Hawley replied and argued, *inter alia*, that Swift conceded the issue in its two-page opposition when it stated that "admittedly, the sole negligence issue does not appear to be a 'winner' for Swift." (Pl.'s Reply Br. 2, 3, ECF No. 35.)

   2.   **Discussion**

"[E]mployees bear some responsibility for their personal safety on a construction site." *Fernandes v. DAR Dev. Corp*., 119 A.3d 878, 890 (N.J. 2015) (citing *Kane v. Hartz Mountain Indus., Inc*., 650 A.2d 808, 818 (N.J. 1994)). A construction employee "is required to perform . . . assigned tasks in a manner which is reasonably safe under all of the circumstances associated with the task." *Id*. To determine the degree of "an employee's responsibility for his . . . injuries," the

proper inquiry is "whether he . . . failed to use the care of a reasonably prudent person under all of the circumstances, either in continuing to work in the face of a known risk or in the manner in which he or she proceeded in the face of that known risk." *Id.* (citing *McGrath v. Am. Cyanamid Co.*, 196 A.2d 238, 240 (N.J. 1963)). Here, Andalora was aware of the proper manner in which to utilize and move a Baker scaffold, failed to follow this safety protocol, and fell from the scaffold. The Court finds that Andalora's own negligence at least partially caused his accident. Thus, ICS is not solely liable for Andalora's injuries. As noted above, the Court agrees with the Appellate Division's holding and finds that Mt. Hawley is subrogated to ICS's right to claim indemnification from Swift. Because New Jersey law prohibits indemnification of a party for its sole negligence, and ICS was not solely negligent in connection with Andalora's accident, Mt. Hawley is entitled to indemnification from Swift, pursuant to the Subcontract, for amounts Mt. Hawley paid to settle the *Andalora* Litigation. The Court, therefore, grants summary judgment on this ground.

Finally, the Court addresses Mt. Hawley's request for attorneys' fees and costs. "New Jersey disfavors the shifting of attorneys' fees." *Litton Indus., Inc. v. IMO Indus., Inc.*, 982 A.2d 420, 427 (N.J. 2009) (citing *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 848 (N.J. 1999)). "[A] prevailing party[, however,] can recover those fees if they are expressly provided for by statute, court rule, or contract." *Id.* (citing *Packard-Bamberger & Co., Inc. v. Collier*, 771 A.2d 1194, 1202 (N.J. 2001)). A contractual provision that governs fee shifting "should be strictly construed in light of our general policy disfavoring the award of attorneys' fees." (*Id.* (citing *N. Bergen*, 730 A.2d at 843)). Given the New Jersey policy that disfavors fee shifting, the unusual history and previous litigation between the parties and the strength of the briefing Mt. Hawley provided in support of its application for attorneys' fees and costs, the Court

17

declines to award Mt. Hawley attorneys' fees and costs. Accordingly, summary judgment on this issue is denied.

## IV. CONCLUSION

Accordingly, for the reasons set forth above: (i) Mt. Hawley's motion for summary judgment is GRANTED, in part, with respect to ICS's liability in connection with the *Andalora* accident and Mt. Hawley's indemnification claim, as subrogee of ICS, against Swift for its payment of $1 million dollars toward the *Andalora* Litigation settlement and DENIED with respect to claims for attorneys' fees and costs; and (ii) Swift's motion for summary judgment is DENIED. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Date: March 29, 2018